# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00741-COA

**NICHOLAS DEJAUN BROWN A/K/A**                 **APPELLANT**
**NICHOLAS BROWN A/K/A NICHOLAS D.**
**BROWN A/K/A NICOLAS BROWN**

**v.**

**STATE OF MISSISSIPPI**                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/25/2024 |
| TRIAL JUDGE: | HON. MATTHEW GORDON SULLIVAN |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: AMBER LAUREN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/17/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WEDDLE AND LASSITTER ST. PÉ, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. Nicholas Brown was charged with possession of methamphetamine. Prior to trial, the Simpson County Circuit Court granted defense counsel's request for a mental evaluation of Brown to determine his competency to stand trial. After the mental evaluation was conducted, the trial court held a hearing and ruled that Brown was competent. After a jury trial, Brown was found guilty of possession of methamphetamine, and the trial court sentenced him as a subsequent drug offender to serve six years in the custody of the Mississippi Department of Corrections (MDOC).

¶2.    Appealing the conviction, Brown claims that the trial court erred in finding him competent to stand trial.  Finding no error, we affirm.

**Facts and Procedural History**

¶3.    On October 15, 2021, while Brown was being detained on an arrest warrant for aggravated stalking, law enforcement found a small clear bag containing a crystal-like substance in Brown's front pocket.  The substance was later confirmed to be 1.18 grams of methamphetamine.  Brown was indicted on October 14, 2022, for "willfully, unlawfully, feloniously and knowingly" possessing methamphetamine, a Schedule II controlled substance, in violation of Mississippi Code Annotated section 41-29-139(c)(1)(B) (Rev. 2018).  Because he had a prior 2014 conviction of possession of a controlled substance, Brown was charged as "a second or subsequent offender." *See* Miss. Code Ann. § 41-29-147 (Rev. 2018).

¶4.    On January 11, 2023, Brown's appointed trial attorney filed a motion requesting that Brown receive a mental evaluation and treatment at the Mississippi State Hospital (MSH) "before proceeding with his defense."  The trial court entered an agreed order on January 23, 2023, for Brown to be transferred to the MSH for the purposes of evaluating whether he was able to consult with his attorney "with a reasonable degree of rational understanding" and to determine his mental state at the time of the alleged offense.

¶5.    On February 1, 2023, Brown filed pro se letters with the trial court, seeking dismissal of his indictment because there was insufficient evidence to support his former conviction of possession of a controlled substance.  He also challenged the court's order for a mental evaluation, claiming that it was a waste of time and "that this evaluation stunt was [an] insult

2

to the Court." A week later, Brown's attorney filed a motion to withdraw, stating that communication between him and Brown "has become impossible" and that Brown threatened to file a claim for "ineffective assistance of counsel."

¶6. Brown was evaluated by MSH forensic services on December 22, 2023. Brown was not on any psychiatric medications, nor was he receiving mental health treatment at that time. The consulting forensic psychiatrist, Dr. John Montgomery, issued his report on December 29, 2023. Having talked with officers on duty at the jail, Dr. Montgomery noted that Brown was "attention seeking, manipulative, and impulsive." Before the forensic interview, Brown's trial attorney told Dr. Montgomery in an email that Brown had claimed to be a lawyer. When the psychiatrist asked about this, however, Brown acknowledged that he was not a lawyer but that he "had to learn law to overcome it." Brown compared his knowledge of the law to that of a "shade tree mechanic."

¶7. Dr. Montgomery further reported that Brown knew about the court-ordered mental evaluation and "interjected that 'I'm competent to stand trial.'" Because Brown "was focused mainly on being unjustly accused of stalking," Dr. Montgomery "advised him that his court ordered evaluation seemed only to pertain to his methamphetamine possession charge." Brown asked the doctor "for 'paperwork' about this[;] then he stated that the charge carried a maximum of three years[,] and he intended to get 'time served.'"

¶8. Dr. Montgomery opined that Brown has the "ability to consult with his attorney with a reasonable degree of rational understanding in the preparation of his defense and that he has a factual as well as rational understanding of the nature and object of the legal proceedings against him." The doctor concluded that Brown's "behavior problems and his

3

inflated self-appraisals are related to his personality structure rather than a major mental disorder."

¶9. A hearing was held on January 22, 2024, with Dr. Montgomery's report being submitted into evidence. During the hearing, Brown kept insisting to the trial court that his guilty plea for the prior possession charge was involuntary.[1] He also claimed, "[T]here is nothing incompetent about me." After further discussion, the trial judge ruled that Brown was competent to stand trial.

¶10. On March 11, 2024, a pretrial motions hearing was held, during which the trial judge impressed upon Brown the serious nature of the charge. The court explained that the prior possession conviction could be used to enhance his sentence and asked Brown if he understood that he "could be sentenced to up to six years."[2] Brown responded, "Yes, sir."

¶11. The jury trial was held on March 19, 2024. Officer Matthew Stewart with the Simpson County Sheriff's Department testified that he went to Brown's house in Magee, Mississippi, "to serve a warrant on him." The officer conducted a "pat-down for officer safety" and "found a clear bag containing a crystal-like substance in his right front pocket." Officer Stewart identified the bag he took from Brown's pocket. Other officers from the sheriff's department also testified as to the evidence's chain of custody. A forensic scientist

---

[1] This Court considered and rejected Brown's argument that his guilty plea for his prior possession charge was involuntary in *Brown v. State*, 269 So. 3d 476, 480 (¶11) (Miss. Ct. App. 2018).

[2] At the conclusion of the hearing, the trial court found Brown in direct contempt for threatening an officer of the court after Brown was overheard saying to the prosecutor, "[P]ow, pow, pow. I'm going to get you." The court sentenced him to thirty days of incarceration.

4

with the Mississippi Forensics Laboratory, whom the parties stipulated was an expert in controlled substances, stated that he had tested the crystal-like substance and confirmed that it was 1.18 grams of methamphetamine.

¶12.　The jury found Brown guilty, and the trial court entered a final judgment on March 25, 2024, sentencing Brown to serve six years in MDOC custody as a second and subsequent offender.　Brown's trial counsel filed a motion for a new trial, which the court denied on March 26, 2024.　The trial court also entered an order allowing Brown's trial counsel to withdraw and appointing the Office of State Public Defender as counsel for appeal.　Brown appeals his conviction, arguing that the trial court erred in finding he was competent to stand trial.[3]

## Discussion

¶13.　Brown argues that the trial court's finding that he was competent to stand trial was error, as (I) Brown was unable to communicate rationally about his defense with his trial attorney; and (II) Brown could not fully understand the nature of the proceedings against him.

¶14.　"[A] competency determination is a legal inquiry, not a medical inquiry." *Mount v. State*, 412 So. 3d 538, 551 (¶39) (Miss. Ct. App. 2025) (quoting *McManus v. Neal*, 779 F.3d 634, 658 (7th Cir. 2015)).　Mississippi Rule of Criminal Procedure 12.1(a) states that in order for a defendant "to be deemed mentally competent, [he or she] must have the ability to

---

[3] Brown's appellate counsel did not file his notice of appeal until June 26, 2024, at which time he also filed a motion to proceed out of time because appellate counsel was not made aware of his appointment until June 21, 2024. On August 6, 2024, this Court granted Brown's motion to proceed with the appeal.

perceive and understand the nature of the proceedings, to communicate rationally with the defendant's attorney about the case, to recall relevant facts, and to testify in the defendant's own defense, if appropriate." *See also Pitchford v. State*, 240 So. 3d 1061, 1067 (¶31) (Miss. 2017) ("The standard for competency to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding,' and 'has a rational as well as a factual understanding of the proceedings against him.'" (quoting *Gammage v. State*, 510 So. 2d 802, 803 (Miss. 1987))). Rule 12.1 further provides that "mental illness, defect, or disability alone is not grounds for finding a defendant incompetent to stand trial." MRCrP 12.1(a).

¶15. "This Court will reverse a trial court's competency determination only if it is manifestly against the overwhelming weight of the evidence." *Mount*, 412 So. 3d at 551-52 (¶39) (quoting *Sandoval v. State*, 315 So. 3d 469, 474 (¶17) (Miss. 2021)). "The law . . . presumes a criminal defendant competent to stand trial[,] . . . [a]nd the defendant bears the burden to prove by substantial evidence that he or she is mentally incompetent to stand trial." *Pitchford*, 240 So. 3d at 1067 (¶32) (citation and quotation mark omitted).

    **I.**    **Whether Brown had the ability to rationally communicate with his attorney.**

¶16. With regard to the first issue, the sole contention is that Brown's "fixation on his previous stalking charge and guilty plea in the prior [possession] case" made him "unable to rationally communicate with his [trial] attorney about his defense." At the January 22, 2024 hearing, the defense attorney told the court that every time he tried to meet with the defendant, "we revert back to a stalking charge." Brown also notes that in the motion to

6

withdraw as counsel, his trial attorney stated that "[c]ommunication between counsel and Mr. Brown has become impossible" and that Brown had complained about his representation.

¶17. Brown has cited no relevant authority to support a finding that a defendant's irrelevant discussions with his attorney regarding his prior convictions warrant a finding of incompetency to stand trial. "Failure to cite relevant authority obviates the appellate court's obligation to review such issues." *Dickerson v. State*, 291 So. 3d 344, 349 (¶19) (Miss. 2020).

¶18. Nevertheless, we find no merit to this issue. Dr. Montgomery stated in his report that "Brown is able to confer with his attorney and aid in his defense, *if he so chooses*," although the doctor also noted that Brown did exhibit "chronic, maladaptive behavior." (Emphasis added). Although Brown indicated to the doctor a desire to represent himself, he acknowledged to Dr. Montgomery that he was "not a lawyer." When asked by the doctor "how he wanted his attorney to handle his meth possession charge, [Brown] said, 'he should start talking about a plea deal.'" Dr. Montgomery therefore determined that "Brown has the sufficient, present ability to consult with his attorney with a reasonable degree of rational understanding in the preparation of his defense." As argued, while Brown did fixate on his former 2014 conviction and "irrelevant topics" during the pretrial proceedings, the record indicates that he fully cooperated with counsel during the trial.[4] We therefore find the

---

[4] On the morning of trial, it was discovered that Brown had smuggled a small bottle in his pants, which contained what the jail administrator said appeared to be "crap in water." Uncertain as to what Brown's "intent was for that paraphernalia," the trial judge noted Brown's "progression of contemptuous behavior" during the pre-trial hearings and admonished Brown that he was "expected to act in conformance with the proper decorum and dignity of this courtroom." Brown said that he understood that no disruptions or lack

evidence supports a finding of competency with regard to this factor.

## II. Whether Brown possessed a full and rational understanding of the charge against him.

¶19. Brown contends that the continual attempts to argue his prior guilty plea for the previous possession charge was involuntary demonstrated that he did not understand the nature of the proceedings. We find no merit to this claim. Brown's pro se letters filed with the trial court on February 1, 2023, acknowledged his being indicted "for this possession of a schedule II controlled substance to wit: Methamphetamine" and claimed that "it doesn't matter how much it weighed, when it's clear to say that I didn't possess nothing . . . ." At the March 11, 2024 hearing, Brown also responded to the trial judge that he understood that he could be sentenced for up to six years if convicted. Thus, we find that Brown demonstrated that he understood the charge against him and the legal proceedings. He also emphatically asserted on more than one occasion that he was competent to stand trial.

¶20. Dr. Montgomery opined in his report:

> It is my opinion that Mr. Brown has the sufficient, present ability to consult with his attorney with a reasonable degree of rational understanding in the preparation of his defense and that he has a factual as well as rational understanding of the nature and object of the legal proceedings against him.
>
> It is my opinion that Mr. Brown has the present ability to understand and knowingly, intelligently and voluntarily waive or assert his Constitutional rights.

Dr. Montgomery concluded that Brown "demonstrated a factual understanding of his index

---

of respect would be tolerated, and there were no further issues for the remainder of the trial. The only time Brown spoke at trial was during the sentencing phase when he again challenged the voluntariness of his guilty plea on his prior 2014 conviction that was used for sentencing enhancement.

offense, plea bargain proceedings, his Constitutional rights, jury trial proceedings, and realistic observations about the likely outcome of his charge."

¶21.    Taking into consideration the forensic evaluation, Brown's own statements, and the trial court's in-person discussions with Brown, we find the court's determination that Brown was legally competent to stand trial was not against the overwhelming weight of the evidence.  Accordingly, we affirm his judgment of conviction and sentence.

¶22.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**